## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| ABRAHAM LEAVITT, | |
| Plaintiff, | Civil No. 24-886 (RMB) (SAK) |
| v. | **OPINION** |
| SKY WARRIOR BAHAMAS LIMITED d/b/a BAHA MAR CASINO, and CHOW TAI FOOK ENTERPRISES LTD., | |
| Defendants. | |

**RENÉE MARIE BUMB, Chief United States District Judge:**

*Pro se* Plaintiff and alleged card counter Abraham Leavitt sued Defendants Sky Warrior Bahamas Limited d/b/a Baha Mar Casino (Sky Warrior) and Chow Tai Fook Enterprises Ltd. (CTFEL) in New Jersey state court, claiming they violated New Jersey's common law right of access to public accommodations after barring him from playing blackjack at their casino in the Bahamas. After Leavitt obtained a default judgment against them in state court, Defendants removed this action here. They now ask this Court to dismiss Leavitt's lawsuit for improper service. Leavitt resists dismissal, asking this Court to remand this lawsuit arguing Defendants improperly removed it.

For the below reasons, the Court **DENIES** Leavitt's motion for remand (Docket No. 6) and **GRANTS**, **in part**, Defendants' motion to dismiss (Docket No. 4). The Court vacates the default judgment entered by the state court because that judgment is void for improper service. While the Court is inclined to dismiss this lawsuit for improper service, the Third Circuit requires this Court to consider quashing service instead of dismissal. The record here

suggests Leavitt acted in bad faith when seeking default judgment against Defendants because the entity he served process on rejected service and notified Leavitt it would not forward the process to Defendants. The record reveals Leavitt hid that fact from the state court when moving for default judgment. The Court will hold a hearing on whether the Court should dismiss this lawsuit or give Leavitt another try to serve.[1]

## I.    BACKGROUND

### A. The Casino

Leavitt is a Washington citizen. [Notice of Removal ¶ 2, Ex. A, ¶ 1 (Compl.) (Docket No. 1-2).] Sky Warrior is a corporation organized and existing under the laws of the Bahamas. [Decl. of Mark Dunn ¶ 3 (Dunn Decl.) (Docket No. 4-1).] CTFEL is a corporation organized and existing under the laws of Hong Kong. [Decl. of Bradley D. Hornbacher ¶ 7 (Hornbacher Decl.) (Docket No. 4-6).] CTFEL has many subsidiaries and affiliates engaged in the hotel and resort industry. [*Id.* ¶ 3.] CTFEL is the "indirect parent" of CTF BM Operations Ltd. (CTF BM); a Bahamian company that owns Baha Mar Resort located in the Bahamas. [*Id.* ¶¶ 4, 8.] The Baha Mar Resort houses a casino that CTF BM leases to Sky Warrior (the Casino). [*Id.* ¶ 3; see also Dunn Decl. ¶ 4.]

One year ago, Leavitt was on vacation in the Bahamas, and he wanted to try his luck out at the Casino. [Compl. ¶ 6.]   According to Leavitt, Casino staff barred him from playing blackjack "because they identified him as an 'advantage player'"—a fancy term for a card counter. [*Id.* ¶ 9.] Casino staff told Leavitt that they would "physically remove him" and bar him from the Casino if he played blackjack. [*Id.*]

---

[1] This hearing will be in person because the Court may need to take testimony.   Under no circumstances will this Court conduct the hearing by videoconference.

### B.  The Lawsuit

A few weeks after Casino staff barred Leavitt from playing blackjack, he sued Sky Warrior and CTFEL in New Jersey state court.  [*See generally id.*]  He claimed they violated New Jersey's common law right of public access to casinos that the New Jersey Supreme Court recognized in *Uston v. Resorts Int'l Hotel, Inc.*, 445 A.2d 370 (N.J. 1982). [*Id.* ¶ 10.]  Even though Defendants are foreign citizens and the Casino is in the Bahamas, *see* Dunn Decl. ¶¶ 3-4 and Hornbacher Decl. ¶¶ 7-8, Leavitt claims New Jersey is the proper jurisdiction because Defendants have agreed to New Jersey courts' jurisdiction.  [Compl. ¶¶ 2-3.]

According to Leavitt, he searched New Jersey's and other States' Secretary of State websites to locate Defendants' registered agent.  [Docket No. 1-4 (Affidavit of Diligence Inquiry).]  Leavitt's search revealed that Defendants' alleged registered agent is "Corporation Service Company" (CSC) located in Florida.  [*Id.*]  Leavitt then served Defendants through CSC.  [Docket No. 1-7 (Leavitt's Request for Entry of Default ¶ 3, Ex. 1).]  But CSC cannot accept service of process on Defendants' behalf.  [Dunn Decl. ¶¶ 5-6; Hornbacher Decl. ¶¶ 10-11.]  In fact, CSC notified Leavitt that it could not accept service and rejected it.  [Dunn Decl. ¶ 6, Ex. B; Hornbacher Decl. ¶ 11, Ex. B.]

Despite CSC's rejecting service, Leavitt obtained a default against Defendants in state court when they did not answer or respond to Leavitt's Complaint.  [Docket No. 1-7; *see also* Docket No. 1-9 (Leavitt's Motion for the Entry of Default Judgment).]  In doing so, Leavitt certified to the state court that he properly served Defendants through CSC.  [*Id.*]  He never mentioned that CSC rejected service.  [*Id.*] Leavitt then moved for default judgment against Defendants, which the state court granted.  [Docket Nos. 1-9, 1-10 (Order granting default judgment motion).]  The state trial court ordered Leavitt to either request a proof hearing on

his damages or submit documentation showing his damages are for a sum certain. [Docket No. 1-10.] Leavitt requested a proof hearing, which the state court scheduled. [Docket Nos. 1-12 to -13.] Defendants then entered a special appearance in state court, asking the court to adjourn the proof hearing so they could move to vacate the default judgment. [Docket Nos. 1-14 to 1-15.] Leavitt opposed Defendants' request, reiterating that he properly served Defendants through CSC. [Docket No. 1-17.]

### C. Defendants' Removal and the Parties' Motions

Before the state court ruled on Defendants' request, Defendants removed this matter here. [Docket No. 1.] Defendants now ask this Court to dismiss Leavitt's Complaint for improper service. [Defs.' Mem. of Law in Supp. of Mot. to Dismiss 6-9 (Defs.' MTD Br.) (Docket No. 4-12).]

Defendants argue they never authorized CSC to accept service of process on their behalf, and so, Leavitt never properly served them. [*Id.* at 7-8.] They explain that Leavitt mistakenly relied on Florida's Division of Corporations website that lists CSC as the registered agent for "Sky Warrior US LLC," which, according to Defendants, is a separate legal entity from Sky Warrior. [*Id.* at 8-9.] Defendants go onto explain that Sky Warrior is the sole member of Sky Warrior US LLC. [*Id.* at 9.] Defendants argue Leavitt confuses Sky Warrior with Sky Warrior US LLC when claiming service was proper. [*Id.*] They also point out that CSC rejected service. [*Id.* at 7.]

On top of the improper service, Defendants contend they are foreign citizens whose home countries are Hague Convention signatories. [*Id.* at 6; *see also* Dunn Decl. ¶ 9, Ex. D; Hornbacher Decl. ¶ 13, Ex. C.] As such, Leavitt must serve them in accordance with the Hague Convention. [Defs.' MTD Br. at 7.] Defendants assert Leavitt never offered any

evidence that he complied with the Hague Convention when seeking a default judgment in the state court. [*Id.* at 6-7.] Thus, Defendants ask this Court to dismiss Leavitt's lawsuit for improper service. [*Id.* at 9.]

Because Leavitt never properly served them, Defendants contend the state court lacked personal jurisdiction over them. [*Id.* at 9-10.] Pointing to *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14 (3d Cir. 1985), Defendants explain Third Circuit courts must set aside default judgments that are entered without proper service. [*Id.* at 10.] Defendants contend such judgments are "void." [*Id.* (quoting *Gold Kist*, 756 F.2d at 19).] Accordingly, Defendants ask this Court to vacate the default judgment the state court entered against them. [*Id.* at 9-12.]

Leavitt resists dismissal, asking this Court to remand the matter. [Leavitt Mem. of Law in Supp. of Mot. to Remand 1-7 (Leavitt Remand Br.) (Docket No. 6).] Leavitt contends Defendants improperly removed this action "in violation of 28 U.S.C. § 1447(c)" because the *Rooker-Feldman* and res judicata doctrines prohibited them from doing so. [*Id.* at 1, 3-6.] According to Leavitt, the *Rooker-Feldman* doctrine[2] strips this Court of jurisdiction and bars it from vacating the default judgment entered by the state court. [*Id.* at 3-5.] Leavitt explains the *Rooker-Feldman* doctrine prohibits a defaulting party from removing an action to federal court to challenge a default judgment. [Leavitt Reply Mem. of Law in Supp. of Mot. to Remand 3-4 (Docket No. 8).] He adds res judicata bars Defendants from relitigating their liability under that default judgment. [Leavitt Remand Br. at 5-6.]

Turning to service, Leavitt argues he properly served Defendants through CSC. [*Id.* at 6.] He contends that the information from Florida's Secretary of State confirms CSC is

---

[2] The doctrine takes its name from two United States Supreme Court cases: *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923) and *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

Defendants' registered agent.  [*Id.*]  He dismisses Defendants' argument that CSC is the registered agent only for Sky Warriors US LLC, and not Sky Warrior, and contends that "Baha Mara" created Sky Warriors US LLC "solely for the purpose of collection actions in the United States."  [*Id.*]

## II.    DISCUSSION

Because Leavitt challenges this Court's jurisdiction, the Court starts with his remand motion.  *Verdone v. Rice & Rice, PC*, ___ F. Supp. 3d ___, ___, 2024 WL 1191981, at *5 (D.N.J. Mar. 20, 2024).  This is so because "federal courts must always ensure they have jurisdiction over a dispute."  *Id.*

### A.  Leavitt's Motion to Remand

Leavitt's remand motion is a nonstarter.  The removal statute allows federal courts to reexamine default judgments entered by state courts before removal, and if appropriate, cast them aside.  Leavitt also miscomprehends the *Rooker-Feldman* and res judicata doctrines application in removed actions.  Neither doctrine prohibits Defendants from removing this action.

The removal statute allows a defendant to remove an action to a federal court that has original jurisdiction over the civil action.  28 U.S.C. § 1441(a).  The defendant must remove the lawsuit within thirty days of being served with process.  *Id.* § 1441(b)(1).  That thirty-day countdown starts only when a plaintiff properly serves process on the defendant or the defendant waives service.  *See, e.g.*, *Di Loreto v. Costigan*, 351 F. App'x 747, 751 (3d Cir. 2009) ("[T]he removal period for a defendant does not begin to run until that defendant is properly served or until that defendant waives service." (citing *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999))).

Once removed, a federal court can revisit orders entered by the state court. 28 U.S.C. § 1450 ("All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."); *see generally Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 437 (1974). Indeed, "[w]hen a case is removed[,] the federal court takes it as though everything done in the state court had in fact been done in the federal court." *Munsey v. Testworth Labs.*, 227 F.2d 902, 903 (6th Cir. 1955) (citation and internal quotation marks omitted); *accord Nissho-Iwai Am. Corp.*, 845 F.2d 1300, 1303 (5th Cir. 1988). Thus, federal courts can revisit default judgments entered by the state court, and, if appropriate, set them aside. *See, e.g.*, *Kizer v. Sherwood*, 311 F. Supp. 809, 811 (M.D. Pa. 1970) ("As far as the default judgment previously entered in the [s]tate [c]ourt is concerned, there is no question that under the general removal statute, . . . it is within the power of a [f]ederal [c]ourt to set aside a default judgment rendered by a [s]tate [c]ourt before removal of a particular case."); *see also N.J. Title Ins. v. Cecere*, 2020 WL 7137873, at *3-4 (D.N.J. Dec. 7, 2020) (vacating entry of default entered by state court before removal). Said another away, a default judgment entered by the state court before removal "does not deprive a federal district court of jurisdiction to preside over the removed case." *Zokaites Props., LP v. La Mesa Racing, LLC*, 2012 WL 3144127, at *8 (W.D. Pa. Aug. 1, 2012).

And the *Rooker-Feldman* doctrine does not deprive federal courts of jurisdiction over cases properly removed from state court. *Jenkins v. MTGLQ Inv'rs*, 218 F. App'x 719, 724 (10th Cir. 2007) (holding "the *Rooker-Feldman* doctrine has no application to a properly removed case where . . . there is no attack on a separate and final state-court judgment"); *accord Zokaites*, 2012 WL 3144127, at *8. The *Rooker-Feldman* doctrine establishes "the

principle that federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010). The doctrine is a "narrow" one, applying to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine flows from a statute vesting the United States Supreme Court with exclusive jurisdiction to hear appeals from final state court judgments. *Rooker*, 263 U.S. at 416 ("Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment for errors of that character."); *see also* 28 U.S.C. § 1257(a). So, for the *Rooker-Feldman* doctrine to bar a federal lawsuit filed on the heels of a state court action, the party invoking the doctrine must show: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W.*, 615 F.3d at 166 (alterations in original) (quoting *Exxon Mobil*, 544 U.S. at 284).

But when an action is properly removed from state court, the *Rooker-Feldman* doctrine doesn't apply. *Jenkins* 218 F. App'x at 724; *accord Wills v. Encompass Ins.*, 47 F.4th 900, 903-04 (8th Cir. 2022) ("[T]he *Rooker-Feldman* doctrine does not apply to cases removed to federal court."). This is so because when a party removes an action to federal court based on the court's original jurisdiction, the removing party is merely continuing that lawsuit in the federal forum—not starting a new one. *See Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020) (explaining "[t]he [federal court's] jurisdiction on removal

8

is original not appellate" (alterations in original) (quoting *Freeman v. Bee Mach. Co.*, 319 U.S. 448, 452 (1943))); *see also Zokaites*, 2012 WL 3144127, at *9 (explaining a removed action is not the commencement of a new lawsuit, reasoning "[a]n action initially 'commenced' in a state court becomes 'federalized' when a notice of removal is filed" (quoting *Tehan v. Disability Mgmt. Servs. Inc.*, 111 F. Supp. 2d 542, 547-48 (D.N.J. 2000))).   Said differently, removal is not an appeal of state court proceedings. *Jenkins*, 218 F. App'x at 723 ("Proper removal does not constitute an appeal, de facto or otherwise, of the state court proceedings but a continuation of them."); *see also Ware v. Fleetboston Fin. Corp.*, 180 F. App'x 59, 64 (11th Cir. 2006) (ruling the *Rooker-Feldman* doctrine inapplicable where removing party invoked "district court's original jurisdiction over the case and was not appealing the state court judgment").

Once an action is properly removed, the *Rooker-Feldman* doctrine does not stand in federal courts way to review a default judgment entered by a state court. *Westlake Legal Grp. v. Yelp, Inc.,* 599 F. App'x 481, 483 (4th Cir. 2015) (holding the *Rooker-Feldman* doctrine did not bar defendant from removing lawsuit to federal court even after plaintiff obtained a default judgment against defendant in state court); *see also Donel v. Greenbelt Res. Corp.*, 2023 WL 4677023, at *1-2 (C.D. Cal. June 8, 2023) (rejecting plaintiff's argument that the *Rooker-Feldman* doctrine barred defendant from removing the action to federal court and seeking to vacate default judgment entered in state court).   Indeed, many courts have refused to apply the *Rooker-Feldman* doctrine in the way Leavitt wants to use it here. *See, e.g, Jenkins*, 218 F. App'x at 723-24 (affirming district court's order vacating default judgment entered before removal, finding the *Rooker-Feldman* doctrine inapplicable to removed actions); *Brown & Root Indus. Servs., LLC v. Nelson*, 2017 WL 5957100, at *4 (M.D. La. 2017) (denying motion to remand, ruling the *Rooker-Feldman* doctrine did not prevent the court from exercising

9

jurisdiction after state court entered default judgment); *Kent v. Harris*, 2008 WL 2434122, at *1 (W.D. Wis. June 13, 2008) (vacating default judgments entered before removal, ruling the *Rooker-Feldman* doctrine did not prevent court from vacating default judgments); *cf. Wills*, 47 F.4th at 903-04 (reversing district's ruling that the *Rooker-Feldman* doctrine barred court from vacating state court order granting summary judgment and awarding damages before removal, holding the doctrine does not apply to removed actions).

All the more reason the *Rooker-Feldman* doctrine doesn't apply here is that the default judgment entered against Defendants is not a final judgment. *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (explaining the *Rooker-Feldman* doctrine bars inferior federal courts from "exercising appellate jurisdiction over *final* state-court judgments" (emphasis added))). Indeed, the *Rooker-Feldman* doctrine applies only when the state court proceedings have "ended." *Exxon*, 544 U.S. at 291. "For purposes of *Rooker-Feldman*, a judgment is final where a lower state court issues a judgment and the losing party allows the time for appeal to expire." *Sparkman v. Wells Fargo Bank Nat'l Assoc.*, 2022 WL 4445402, at *2 (D.N.J. Sept. 23, 2022) (quoting *Malhn v. Sec. U.S. Dep't St.*, 938 F.3d 453, 459 (3d Cir. 2019)).

In New Jersey, default judgments are not appealable. *See generally Haber v. Haber*, 601 A.2d 1199, 1200 (N.J. Super. Ct. App. Div. 1992). The defaulting party must move to vacate the default judgment before the trial court, and the trial court's decision denying that motion is appealable. *See, e.g.*, *N.J. Div. of Youth & Fam. Servs. v. T.R.*, 751 A.2d 1098, 1100-01 (N.J. Super. Ct. App. Div. 2000). A defaulting party seeking to vacate a default judgment must move "within a reasonable time[,]" unless the party seeks to vacate the judgment for excusable neglect, newly discovered evidence, or fraud. N.J. Ct. R. 4:50-2; *see also id.* at 4:50-1(a)-(c).

10

In those three instances, the defaulting party must move within a year of the state court entering the judgment. *Id.*

Here, the state court only issued an order granting Leavitt's motion for default judgment. [Docket No. 1-10.] In doing so, the court ordered Leavitt to either submit documentation showing his damages are for a sum certain or request a proof hearing as to damages. [*Id.*] Despite Leavitt's characterization, the state court's order granting default judgment against Defendants is not a final judgment. N.J. Ct. R. 4:43-2(b) (authorizing trial courts to hold proof hearings to, among other things, "determine the amount of damages . . . to enable the court to enter judgment or to carry it into effect").

In any event, within weeks of the state court scheduling the proof hearing, Defendants entered a special appearance and asked the state court to adjourn that hearing so they could move to vacate the default judgment. [Docket Nos. 1-14 to 1-15.] Defendants started the process in state court to set aside the default judgment. And Defendants' time to file an appeal could not have started until the state court ruled on the motion to vacate the default judgment. So the order granting default judgment against Defendants is not a final judgment under the *Rooker-Feldman* doctrine. *See Sheriff v. Accelerated Receivables Solutions, Inc.*, 283 F. App'x 602, 606-07 (10th Cir. 2008) (finding default judgment entered against plaintiff not a final judgment for *Rooker-Feldman* purposes where plaintiff had not moved to vacate the default judgment, and therefore, his time to appeal had not yet started). Thus, the *Rooker-Feldman* doctrine has no place here. *Sawyer v. USAA Ins.*, 839 F. Supp. 2d 1189, 1123 (D.N.M. 2011) ("[W]here post-judgment motions are pending or could be filed, the *Rooker–Feldman* doctrine is inapplicable, because the judgment is not 'the final word of a final court.'" (quoting *Mkt. St. Ry. Co. v. R.R. Comm'n of State of Cal.*, 324 U.S. 548, 551 (1945))).

11

Likewise, Leavitt cannot rely on res judicata.  For res judicata to apply, there must be, at a minimum, two lawsuits.  *Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*, 105 F.4th 67, 73 (3d Cir. 2024) (reviewing New Jersey res judicata principles); *accord McNeil v. Legis. Apportionment Com'n of State*, 828 A.2d 840, 858-59 (N.J. 2003).  Again, a removed action is not a new lawsuit but the continuance of the first lawsuit filed in state court.  *Jenkins*, 218 F. App'x at 724; *see also Zokaites*, 2012 WL 3144127, at *10.  So res judicata is inapplicable here. *Soloway v. Huntington Nat'l Bank*, 2012 WL 12883652, at *1 (W.D. Mich. Dec. 18, 2012) (explaining "neither res judicata nor the *Rooker-Feldman* doctrine bar the removal of [an] action from state court to federal court as the removal is neither a new action involving the same parties nor an appeal"); *see also Zokaites*, 2012 WL 3144127, at *10 (rejecting argument that res judicata required court to dismiss action, reasoning res judicata did not apply to default judgment entered by state court before removal).

Besides the *Rooker-Feldman* and res judicata doctrines, Leavitt offers no explanation on how Defendants improperly removed this lawsuit.  This Court detects no error. Defendants removed this lawsuit based on the Court's diversity jurisdiction, 28 U.S.C. § 1332. [Notice of Removal ¶ 12; see also Compl. ¶¶ 1-3.]  As will be discussed, Leavitt never properly served Defendants, and thus the removal statute's thirty-day countdown never started. *McKnight v. Home Depot USA, Inc.*, 2024 WL 2327871, at *4 (D.N.J. Apr. 10, 2024) (denying motion to remand, ruling the removal statue's thirty-day period "never commenced" where plaintiff did not properly serve process on defendant); *see also Young v. Chipotle Mexican Grill of Colorado, LLC*, 2023 WL 5155910, at *4 (D.N.J. July 14, 2023) (same).  To the extent Leavitt relies on 28 U.S.C. § 1447(c) for a remand, *see* Leavitt Remand Br. at 1, that statute is inapplicable because Defendants timely removed this matter and Leavitt points to no

procedural defect in the removal. Now properly removed here, Defendants have the "right to the opinion of [this Court] . . . as to the validity of the service of process." *Mech. App. Co. v. Castleman*, 215 U.S. 437, 441 (1910). So, the Court denies Leavitt's remand motion.

### B. Defendants' Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(5) allows courts to dismiss a lawsuit for improper service. "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). To determine whether service of process was valid before removal, federal courts "apply the law of the state under which the service was made[]" or purportedly made. *Granovsky v. Pfizer, Inc.*, 631 F. Supp. 2d 554, 560 (D.N.J. 2009); *see also R.K. v. Bender*, 2017 WL 3302690, at *2 (D.N.J. July 7, 2017) (applying New Jersey law to determine whether service was proper where lawsuit was pending in New Jersey state court before removal). "[T]he party asserting the validity of service bears the burden of proof on that issue." *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993).

Sometimes, courts opt to quash service to give plaintiff another try to serve a defendant rather than dismiss the complaint for improper service. *See, e.g.*, *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992) ("[D]istrict courts possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process."). The Third Circuit has instructed district courts to hold off on dismissing a complaint for improper service where "there exists a reasonable prospect that service may yet be obtained." *Id.* Courts in this District have quashed service rather than dismiss a lawsuit for improper service

if a plaintiff acted in good faith but failed to make proper service.  *See*, *e.g.*, *Ramada Worldwide Inc. v. Shriji Krupa, LLC*, 2013 WL 1903295, at *6 (D.N.J. Apr. 17, 2013).

Since Leavitt filed this lawsuit in New Jersey state court and obtained a default judgment there, this Court applies New Jersey law on service of process.  *See Advanced Ortho Hand Surgery PA v. Oxford Health Ins.*, 2018 WL 797422, at *1 (D.N.J. Feb. 8, 2018).  Leavitt shoulders the burden to show he properly served Defendants under New Jersey's service rules.  *Grand Entm't*, 988 F.2d at 488.

By New Jersey Rules of Court 4:4-4(a), the "primary method" to obtain personal jurisdiction over a defendant is personal service within New Jersey.  The manner of personal service depends on who the defendant is—a natural person, a corporation, a partnership, the State of New Jersey, and so on.  N.J. Ct. R. 4:4-4(a)(1)-(9).  Personal service on a defendant's registered agent in New Jersey will confer personal jurisdiction.  *Id.* at 4:4-4(a)(1).  If service cannot be made in New Jersey, then Rule 4:4-4(b) allows substituted or constructive service.  Before obtaining personal jurisdiction by substituted or constructive service, the plaintiff must file an Affidavit of Inquiry explaining "that despite diligent effort and inquiry personal service cannot be made in accordance" with Rule 4:4-4(a).  *Id.* at 4:4-4(b)(1).  That Affidavit must "fully specify[] the inquiry made, of what persons and in what manner, so that by the facts stated therein it may appear that diligent inquiry has been made for the purpose of effecting actual notice."  *Id.* at 4:4-5(b).  If a plaintiff files a proper Affidavit of Inquiry, then the Rules allow service of process outside of New Jersey's or the United States' territorial jurisdiction under certain conditions.  *Id.* at 4:4-4(b)(1)(A)-(B).

Here, Leavitt tried to serve Defendants through CSC.  [Docket No. 1-4.]  But CSC cannot accept service on Defendants' behalf and rejected service.  [Dunn Decl. ¶¶ 5-6;

14

Hornbacher Decl. ¶¶ 10-11.]  In fact, CSC notified Leavitt of the rejection days after service, explaining it cannot forward the process to Defendants.  [Dunn Decl. ¶ 6, Ex. B; Hornbacher Decl. ¶ 11, Ex. B.]    Because Leavitt did not personally serve Defendants in New Jersey, he had to file an Affidavit of Inquiry in the New Jersey state court before relying on substituted or constructive service.  N.J. Ct. R. 4:4-4(b)(1).  The Affidavit of Inquiry requires a litigant to show his due diligence to locate the party to be served.  *Id.* at 4:4-5(b).  While due diligence does not require a litigant to "take every conceivable action[,]" it requires a litigant "to follow up on information [he] possess or can reasonably obtain[.]"  *Guardian Life Ins. of Am. v. Crystal Clear Indus.*, 2012 WL 1884003, at *5 (D.N.J. May 22, 2012).  Yet in his Affidavit of Inquiry, Leavitt never mentions that CSC rejected service and told him that it cannot accept service on Defendants' behalf.  [Docket Nos. 1-4, 1-6.]  After CSC rejected service, the record reveals Leavitt never tried to serve Defendants again.  Instead, he sought an entry of default against Defendants relying on the service of process that CSC rejected.  [Docket No. 1-7.]  Leavitt's silence on CSC's rejection when seeking an entry of default suggests to the Court that he was trying to conceal that fact from the state court.

And here Leavitt never mentions CSC's rejection letters to defend against Defendants' motion to dismiss for improper service.  Indeed, he offers nothing to rebut Defendants' evidence that CSC is not their registered agent authorized to accept service of process.  [Dunn Decl. ¶¶ 5-6; Hornbacher Decl. ¶¶ 10-11.]  As Defendants explain, the Florida Secretary of State information that Leavitt relied on to show CSC is Defendants' registered agent is not accurate.  [Leavitt Remand Br. at 8; *see also* Docket No. 1-4.]  The Florida Secretary of State lists CSC as the registered agent for Sky Warrior US LLC, a distinct legal entity from Sky

Warrior.  [Docket No. 1-5; *see also* Dunn Decl. ¶¶ 7-8.]  Leavitt has not shouldered his burden to show he properly served Defendants.

Because Leavitt never properly served Defendants, the state court lacked personal jurisdiction over them.  *Grand Entm't*, 988 F.2d at 492 ("Proper service is still a prerequisite to personal jurisdiction.").  Thus, the state court's default judgment entered against Defendants is void.  *Gold Kist*, 756 F.2d at 19 ("A default judgment entered when there has been no proper service of the complaint is, *a fortiori,* void, and should be set aside."); *see also Taylor v. Gilliam*, 2013 WL 6253654, at *6-7 (D.N.J. Dec. 4, 2013) (vacating default entered by state court because plaintiff failed to properly serve defendant, explaining "[t]he Third Circuit and multiple district courts within the Circuit have recognized that an entry of default or a default judgment can be set aside if it was not properly entered at the outset, including circumstances where proper service of the complaint is lacking").  So the Court vacates the default judgment entered against Defendants by the state court.[3]  Fed. R. Civ. P. 60(b)(4).

Lastly, given the Third Circuit's instruction to consider quashing service instead of dismissal, *Umbenhauer*, 969 F.2d at 30, the Court will hold a hearing on Leavitt's efforts to serve Defendants and his actions in the state court.  The record reveals Leavitt acted in bad faith when obtaining the default judgment against Defendants given CSC's rejection of service.   And nothing before the Court suggests Leavitt tried to properly serve Defendants. Setting aside the service problems, the Court struggles to see how this Court can exercise personal jurisdiction over Defendants and how New Jersey is the proper venue for this lawsuit.

---

[3] If a court enters default judgment improperly because service was improper, a reviewing court need not conduct an analysis under Rule 60(b).  *Gold Kist*, 756 F.2d at 19 (explaining the traditional analysis under Rule 60(b) to set aside a default judgment "is not necessary" if default judgment "was improperly entered").

For improper service, the record suggests Leavitt did not act in good faith.  Again, after CSC notified Leavitt that it rejected service and it would not forward service to Defendants, Leavitt sought and obtained an entry of default against Defendants in state court. [Docket Nos. 1-4, 1-6, and 1-7.]  Leavitt's silence to the state court on CSC's rejection of service suggests he tried to hide that rejection.  Said another way, he never laid his cards on the table when moving to have Defendants declared in default.  So the Court will require Leavitt to explain his conduct before deciding whether quashing service is appropriate.

What is more, Leavitt has not addressed Defendants' arguments about service of process on them as foreign citizens.  [Defs.' MTD Br. at 6-9; Dunn Decl. ¶3; Hornbacher Decl. ¶ 7.]  "Federal Rule of Civil Procedure 4(f) governs service of process on defendants in foreign countries and sets forth three potential methods for service: (1) under the Hague Convention or other applicable international agreement; (2) in the absence of limitations under an international agreement, as a foreign country's law prescribes or permits or as directed by a foreign authority; or (3) by other means not prohibited by international agreement, as directed by the Court."  *Celgene Corp. v. Blanche Ltd.*, 2017 WL 1282200, at *2 (D.N.J. Mar. 10, 2017).  Likewise, New Jersey's Rules of Court allow personal service on foreign citizens under certain conditions. N.J. Ct. R. 4:4-4(b)(1)(B).  Defendants' home countries are signatories to the Hague Convention.  [Dunn Decl. ¶ 9, Ex. D; Hornbacher Decl. ¶ 13, Ex. C.]  *See also Emqore Envesecure Priv. Cap. Tr. v. Singh*, 2020 WL 12654314, at *2 (D.N.J. July 9, 2020) (noting Hong Kong is a Hague Convention signatory); *S.E.C. v. Dubovoy*, 2019 WL 6271602, at *4 n.8 (D.N.J. Nov. 25, 2019) (same for the Bahamas).  Some courts in this District (and throughout the country) have recognized the Hague Convention is the sole method of serving foreign defendants whose home countries are signatories to the

17

convention. *S.E.C. v. Dubovoy*, 2016 WL 7217607, at *2 (D.N.J. Dec. 13, 2016); *but see Dusa Pharma., Inc. v. Sun Pharma. Indus.*, 2024 WL 4151169, at *3 (D.N.J. Sept. 11, 2024).

Yet Leavitt offers no explanation on whether he has or will attempt service in accordance with the Hague Convention (or any other permissible method of service).  He has also not asked for more time to serve Defendants.  So Leavitt must show a "reasonable prospect" exists that he may properly serve Defendants.  *Umbenhauer*, 969 F.2d at 30; *contra Omega Pats., LLC v. Geotab USA, Inc.*, 660 F. Supp. 3d 274, 280 n.2 (D. Del. 2023) (dismissing plaintiff's complaint as to foreign defendant for improper service rather than quashing service because plaintiff "has not attempted to show that there remains a reasonable prospect of effecting service on [foreign defendant]").

Shelving service, Defendants have challenged this Court's ability to exercise personal jurisdiction over them and venue for this lawsuit.  [Defs.' MTD Br. at 6 n.2.]  Having reviewed Leavitt's Complaint, the Court gravely doubts that New Jersey courts can exercise personal jurisdiction over Defendants given Leavitt's claims or that venue here is proper.  Nothing in the record suggests Defendants purposefully directed their conduct toward New Jersey or that Leavitt's lawsuit arises out of, or relates to, Defendants' alleged conduct in this State. *Danziger*, 948 F.3d at 129-30 (reviewing specific jurisdiction elements).  Based on Leavitt's Complaint, Leavitt's claims focus on Defendants' alleged operation of the Casino in the Bahamas and the Casino's staff refusal to allow Leavitt to play blackjack there.  [Compl. ¶¶ 6-7, 9.]  Other than his Complaint's bald assertions, Compl. ¶¶ 2-3, 8, Leavitt offers no evidence that Defendants have consented to New Jersey courts' jurisdiction.  At the hearing, Leavitt must show to the Court's satisfaction that it can exercise personal jurisdiction over Defendants.  *See, e.g.*, *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992) ("[O]nce

the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction."). Because venue is an affirmative defense, Defendants must show venue is lacking.  *Great W. Mine & Min. Co. v. ADR Options, Inc.*, 434 F. App'x 83, 86-87 (3d Cir. 2011). If Leavitt can show this Court has personal jurisdiction over Defendants, then Defendants must prove Leavitt has improperly laid venue.  *Meyers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1992).  At the hearing, the parties shall be prepared to address the personal jurisdiction and venue challenges.[4]

## III.    CONCLUSION

For the above reasons, the Court **DENIES** Leavitt's motion to remand (Docket No. 6), and **GRANTS, in part,** Defendants Sky Warrior's and CTFEL's motion to dismiss (Docket No. 4).  An accompanying Order of today's date shall issue.

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge

Dated: September 24, 2024

---

[4] Defendants also challenge the merits of Leavitt's lawsuit. [Defs.' MTD Br. at 6 n.2.] Having reviewed Leavitt's Complaint, this Court too questions the merits of Leavitt's claim based on New Jersey's common law right of access to public accommodations.  In *Utson v. Resorts Intern. Hotel, Inc.*, the New Jersey Supreme Court explained that when casinos or other property owners "open their premises to the general public in the pursuit of their own property interests, they have no right to exclude people unreasonably."  445 A.2d 370, 375 (N.J. 1982).  There, the casino excluded a patron who was a card counter.  *Id.*  at 371-72.   After reviewing New Jersey's Casino Control Act and its implementing regulations, the *Utson* court held that the gaming regulations did not allow the casino to exclude the patron since he played blackjack according to the rules issued by the Casino Commission. *Id.*  at 372-73.  The court observed that only New Jersey's Casino Commission "has the authority to exclude persons based upon their methods of playing licensed casino games[.]"  *Id.* at 375.  The *Uston* court went onto explain that the casino acted unreasonably by excluding the patron because he did "not threaten the security of any casino occupant . . . [or] disrupt[] the functioning of any casino operations. *Id. Utson* expresses the minority view on a casino owner's right to exclude a patron, and some courts have refused to adopt it.  *See generally Slade v. Caesars Entm't Corp.*, 373 P.3d 74, 77 (Nev. 2016) (explaining *Utson* takes the narrow position on the common law right to exclude); *see also Brooks v. Chicago Downs Ass'n, Inc.*, 791 F.2d 512, 517 (7th Cir. 1986) (declining to follow *Uston*).   This Court struggles to see how New Jersey's common law applies to foreign companies operating a casino in another country.   At the hearing, Leavitt should be prepared to address whether his Complaint fails to state a claim.