IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ABRAHAM LEAVITT,<br><br>        Plaintiff,<br><br>    v.<br><br>SKY WARRIOR BAHAMAS LIMITED d/b/a BAHA MAR CASINO, and CHOW TAI FOOK ENTERPRISES LTD.,<br><br>        Defendants. | Civil No. 24-886 (RMB) (SAK)<br><br>**MEMORANDUM ORDER** |

**RENÉE MARIE BUMB, Chief United States District Judge:**

    "You got to know when to hold 'em, know when to fold 'em, Know when to walk away and know when to run, You never count your money when you're sittin' at the table, There'll be time enough for countin' when the dealing's done."

    - Kenny Rogers, *The Gambler*, *on* The Gambler (United Artist Group 1978).

Some say *The Gambler* is not a song about poker; it's about how to deal with the cards that you've been dealt in life. One message *The Gambler* conveys—words Plaintiff Abraham Leavitt (a self-professed gambler and skilled card counter) should have heeded—is that sometimes it's better to quit while you're ahead (or behind) before things get worse.

As the parties know, Leavitt filed this lawsuit in New Jersey state court after he was booted from the Baha Mar Resort casino owned by Defendant Chow Tai Fook Enterprises Ltd. (CTFEL) and operated by Defendant Sky Warrior Bahamas Limited d/b/a Baha Mar Casino (Sky Warrior). *Leavitt v. Sky Warrior Bahamas Ltd.*, 2024 WL 4275052, at *1 (D.N.J. Sept. 24, 2024). This Court previously granted Defendants' motion to dismiss for improper service. *Id.* at *6-9. In doing so, this Court found that Leavitt had not properly served

Defendants because the registered agent whom Leavitt had served could not accept service on Defendants' behalf and rejected it. *Id.* at *2, *7. The motion record suggested that Leavitt had concealed those rejections from the state court when seeking and then obtaining default judgment against Defendants when they failed to respond to his lawsuit. *Id.* at *7. So, the Court ordered a hearing to allow Leavitt to explain his conduct before deciding on whether to dismiss this lawsuit or quash service. *Id.* The Court also had grave doubts that it had personal jurisdiction over Defendants and ordered the parties to address that issue at the hearing. *Id.* at *8.

At that hearing, Leavitt's story about service of process kept changing. The Court's conclusion: he did not act in good faith before the state court when seeking default judgment against Defendants. The Court will not countenance Leavitt's conduct and therefore will dismiss this lawsuit without prejudice for improper service. The Court also dismisses this lawsuit because personal jurisdiction over Defendants is lacking. And given Leavitt's conduct, the Court orders him to show cause why the Court should not sanction him.

**I.  SERVICE OF PROCESS:  LEAVITT CANNOT KEEP HIS STORY STRAIGHT**

At the hearing, Leavitt argued that he properly served Defendants through their registered agent and asserted he never received any rejection letter before seeking default judgment against them in the state court. He offered the Court four rejection letters: (1) an October 6, 2023 letter about service on CTFEL bearing an ECF stamp (Docket No. 4-8); (2) an October 9, 2023 letter about service on Sky Warrior bearing an ECF stamp (Docket No. 4-3); (3) a December 14, 2023 letter about service on "Sky Warriors Bahamas/Chow Tai Fook Enterprises Ltd" with no ECF stamp; and (4) a February 13, 2024 letter about service on "Sky

2

Warrior Bahamas Limited d/b/a Baha Mar Casino" with no ECF stamp. Leavitt confirmed that the mailing address listed on the top of each rejection letter is his home address.

Leavitt claimed he only received those letters after Defendants removed this lawsuit to federal court. He asserted the letters are on the "docket" and "from the filing . . . to remove." Yet the December 14th and February 13th rejection letters lack an ECF filing stamp. The Court pressed Leavitt to explain how he received those letters since they were not filed on the docket. From there, Leavitt's story changed.

He now claimed Defendants' counsel must have emailed him those letters. Defendants' counsel admitted they communicated by email, but he could not confirm whether he sent Leavitt the December 14th and February 13th rejection letters. The Court continued to press Leavitt about how he received those letters. Leavitt's story changed again: defense counsel must have backdated the rejection letters. When the Court questioned Leavitt about his backdating allegation, Leavitt could not substantiate it. Leavitt eventually withdrew his baseless allegation.

Defense counsel represented to the Court that his firm could not locate any record of sending the December 14th and February 13th rejection letters to Leavitt. The Court then ordered defense counsel to check his firm records and to update the Court on whether counsel ever provided those rejections letters to Leavitt. After the hearing, defense counsel told the Court that counsel never provided Leavitt with those rejection letters. [Defs.' Letter dated Feb. 7, 2025 at 1 (Docket No. 18).] And Leavitt has since confirmed that defense counsel never supplied him those rejection letters. [Pl.'s Letter dated Feb. 12, 2025 at 3 (Docket No. 19).]

3

Leavitt's representations and the record here confirm this Court's suspicions all along: the entity that Leavitt had served notified him that it had rejected service of process, and despite that rejection, Leavitt pressed ahead and obtained default judgment against Defendants anyway. How else does Leavitt have the December 14th and February 13th rejection letters when they weren't filed on the docket and defense counsel never provided them to him?

In his latest submission, Leavitt states that he believes the December 14th and February 13th rejection letters were "sent to him by mail only after the case was removed." [*Id.* at 3.] The Court finds this assertion problematic for two reasons.

First, all rejection letters had the same mailing address that Leavitt confirmed is his address. So if Leavitt received the December 14th and February 13th rejection letters by mail, then he must have received the October 6th and October 9th rejection letters by mail too. And the state court docket explains why Leavitt likely received the December 14th and February 13th rejection letters by mail after removal.

For example, when moving for default judgment against Defendants, Leavitt certified to the state court that: (1) he served the notice of default on Defendants' purported registered agent on December 4, 2023 by certified mail; and (2) he served his motion papers on Defendants' purported registered agent on December 9, 2023 by first class mail. [Notice of Removal ¶ 7, Exs. F-H (Docket Nos. 1-7 to -9).] The December 14th rejection letter identifies Leavitt's state court action against Defendants and identifies the method of service as "certified mail." Based on the record, it appears the purported registered agent rejected service of the state court's entry of default against Defendants whom Leavitt had served by certified mail.

4

Likewise, when the state court scheduled a proof hearing after entering default judgment against Defendants, Leavitt certified to the state court on February 3, 2024 that he served notice of the hearing on Defendants by priority mail. [*Id.* ¶ 9, Ex. L (Docket No. 1-13).] Leavitt did not identify when he notified Defendants or to whom he mailed the notice. The February 13th rejection letter identifies Leavitt's state court action against Defendants and identifies the method of service as "certified mail." Again, it appears to the Court that all the papers Leavitt served on the registered agent were consistently rejected, and the rejection was mailed to Leavitt. Leavitt likely received the February 13th rejection letter after removal since Defendants removed this matter here on February 15, 2024.

Second, even if Leavitt received the rejection letters after removal, Leavitt continued to argue to this Court that he properly served Defendants even after Defendants offered the October 6th and October 9th rejection letters as proof Leavitt failed to effectuate service. [Docket Nos. 4-3, 4-8.] Despite claiming service was proper, Leavitt never addressed the October 6th and October 9th letters when opposing Defendants' motion to dismiss for improper service. Leavitt's silence is telling.

In the end, the Court finds that Leavitt did not act in good faith when seeking default judgment against Defendants in the state court. The record here, coupled with Leavitt's ever-changing-story, leads this Court to the inescapable conclusion that Leavitt knew the purported registered agent had rejected service of process but Leavitt obtained default judgment against Defendants anyway. Given Leavitt's conduct, the Court dismisses this action without prejudice for improper service.

## II. PERSONAL JURISDICTION IS LACKING

On top of improper service, the Court dismisses Leavitt's lawsuit because Leavitt has not shown this Court has personal jurisdiction over Defendants.

"Personal jurisdiction under the Due Process Clause depends upon 'the relationship among the defendant, the forum, and the litigation.'" *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204 (1977))). "When[,]" as here, "a defendant challenges the court's personal jurisdiction, the plaintiff bears the burden 'to come forward with sufficient facts to establish that jurisdiction is proper.'" *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020) (quoting *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). This case concerns specific jurisdiction.

To show specific jurisdiction, Leavitt must "establish with reasonable particularity" three things: (1) Defendants "purposefully directed [their] activities at the forum[;]" (2) his claims "arise out of or relate to [D]efendant's activities[;]" and (3) "exercising personal jurisdiction [does] not offend traditional notions of fair play and substantial justice." *Danziger & De Llano*, 948 F.3d at 129-30 (cleaned up, citations and internal quotation marks omitted).

As the parties know, the Court expressed grave doubt it could exercise personal jurisdiction over Defendants. *Leavitt*, 2024 WL 4275052, at *8. In his Complaint, Leavitt claimed that Defendants consented to New Jersey courts' jurisdiction. But in his motion papers, he never offered any evidence of that consent when opposing Defendants' motion to dismiss.

At the hearing, Leavitt explained his personal jurisdiction theory. According to Leavitt, he executed a credit agreement with Defendants. Leavitt claimed that by that agreement, Defendants consented to New Jersey courts' jurisdiction. Leavitt did not produce his credit agreement. He claimed he annexed it to his Complaint filed in the state court. He did not.

In any event, Leavitt directed the Court to the Baha Mar website where a form agreement is housed. The Court reviewed the form agreement and examined the language Leavitt claims is the lynchpin for his personal jurisdiction argument. The agreement says:

> DISPUTE RESOLUTION
>
> Accordingly, I hereby voluntarily and irrevocably agree that (a) the interpretation of this Agreement, and (b) any claims, disputes or other matters arising out of or related to (i) this Agreement, and (ii) any documents executed in connection herewith (collectively, **"Disputes"**) shall be governed, construed and enforced in all respects in accordance with the laws of the State of New Jersey, U.S.A. In addition, I further agree that for the determination of all Disputes: (a) I consent and submit to the sole and exclusive jurisdiction and venue, at the election of Sky Warrior, in its sole discretion of (i) the state and federal courts of Atlantic County in the State of New Jersey, U.S.A. (the **"New Jersey Courts"**), or (ii) courts located in the Commonwealth of the Bahamas (the **"Bahamas Courts"**); (b) waive any and all defenses based upon any assertion that the New Jersey Courts or the Bahamas Courts do not have jurisdiction or are an inconvenient or improper venue . . . .

Baha Mar, *Credit Application*, https://www.nccreports.com/application/?bahamar (last visited Apr. 21, 2025) (emphases in original). Leavitt also pointed to various lawsuits that he claims Defendants have filed in New Jersey as additional proof of personal jurisdiction.

Leavitt's personal jurisdiction theory fails three times over. First, nothing in Leavitt's Complaint mentions the credit agreement so the Court struggles to see how Leavitt's claim against Defendants "arise[s] out of or relate[s]" to that agreement to confer jurisdiction.

7

*Danziger & De Llano*, 948 F.3d at 129-30 (citations and internal quotation marks omitted). Indeed, Leavitt based this lawsuit only on Defendants' supposed violation of New Jersey's common law right of public access to casinos. *Leavitt*, 2024 WL 4275052, at *1.

Second, Leavitt overlooks key language in the credit agreement's dispute resolution provision. Indeed, that provision uses the word "I" many times when discussing consent and the waiver of rights. By the agreement, only the applicant for credit consents to personal jurisdiction—not the lender. What's more, by the agreement, the applicant agreed to submit to a jurisdiction selected by *Sky Warrior*—either "the state and federal courts of Atlantic County in the State of New Jersey, U.S.A." or "courts located in the Commonwealth of the Bahamas[.]" The agreement's unambiguous words foreclose Leavitt's personal jurisdiction theory.

Third, Leavitt's reliance on Defendants' alleged New Jersey litigation activities is misplaced. That Defendants may have allegedly availed themselves to New Jersey courts by suing others does not mean that they have agreed to be bound by a judgment entered against them in a different case. And Leavitt's claims against Defendants do not arise or relate to Defendants' in-forum activities. *Danziger & De Llano*, 948 F.3d at 129-30 (citations and internal quotation marks omitted). At any rate, apart from one lawsuit, Sky Warrior US LLC—an entity that is not a Defendant here—filed those lawsuits. A cursory review of those lawsuits reveal that Sky Warrior US LLC sued credit applicants to collect on the credit agreement.

To conclude, Leavitt has failed to shoulder his burden to show personal jurisdiction is proper. *Id.* at 129. The Court therefore dismisses this lawsuit without prejudice for lack of personal jurisdiction.[1]

### III.   SANCTIONS

While the Court dismisses Leavitt's lawsuit, the Court is troubled by Leavitt's conduct both before the state court and here. The record reveals he acted in bad faith when obtaining default judgment against Defendants in state court. And he continued to press his claim that he properly served Defendants despite documentary evidence proving otherwise. He misled the state court and tried to mislead this Court.

Leavitt's *pro se* status does not shield him from Rule 11 sanctions. *Davis v. Cumberland Cnty. Dep't of Corr.*, 2014 WL 1094920, at *1 (D.N.J. Mar. 19, 2014) (citing *Toll v. Am. Airlines, Inc.*, 166 F. App'x 633, 637 (3d Cir. 2006)). Rule 11 requires a party making a submission to the court to make a reasonable inquiry into the facts. "A number of courts have imposed Rule 11 sanctions on pro se plaintiffs who have not performed the factual and legal research required under the Rule." *Taylor v. Messmer*, 2010 WL 545892, at *1 (W.D. Pa. Feb. 9, 2010). A *pro se* litigant may be sanctioned if he "maintains a position advocated in an earlier submission after learning that it ceases to have any merit." *Ellis v. Beemiller, Inc.*, 287 F.R.D. 326, 329 (W.D. Pa. 2012).

On top of Rule 11, this Court has the inherent authority to impose sanctions "upon those who would abuse the judicial process." *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73 (3d Cir. 1994). Courts have this inherent power "to manage their own affairs

---

[1] The Court also dismisses this lawsuit without prejudice under the *forum non conveniens* doctrine. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429-30 (2007).

9

so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).  Through that inherent power, courts can impose sanctions when "a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46 (citations and internal quotation marks omitted).

The record here highly suggests Leavitt engaged in sanctionable conduct before the state court and this Court.  At the hearing, Leavitt kept changing his tune about receiving the rejection letters when the Court questioned him about it.  He changed his tune again after the hearing in his written submission to the Court.  Likewise, he maintained his position that he properly served Defendants when opposing Defendants' motion to dismiss for improper service even when faced with the rejection letters addressed to him.  So the Court will issue an Order to Show Cause requiring Leavitt to show cause why the Court should not sanction him.

### IV. CONCLUSION

For the above reasons, and for good cause shown,

**IT IS** on this **5th** day of **May 2025**, hereby:

**ORDERED** that Plaintiff Abraham Leavitt's Complaint is **DISMISSED WITHOUT PREJUDICE**; and it is finally

**ORDERED** that within 30 days of the entry of this Memorandum Order, Plaintiff Abraham Leavitt shall show cause by written submission filed on the docket explaining why the Court should not sanction him given his litigation conduct.  Plaintiff must specifically address:  (1) his factual investigation into Defendants' registered agent that he served process on; (2) when he received the December 14th and February 13th rejection letters that he provided to this Court; (3) why he never notified this Court of those rejection letters at anytime before

the February 4, 2025 hearing; and (4) why he continued to maintain his position that he properly served Defendants despite having the rejection letters.

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge
